## WESTERN WILLITE CO. et al. v. TRINIDAD ASPHALT MFG. CO.

## TRINIDAD ASPHALT MFG. CO. v. WESTERN WILLITE CO. et al.

Circuit Court of Appeals, Eighth Circuit.
March 20, 1929.

Nos. 8156, 8157.

Rehearing Denied May 4, 1929.

S. Mayner Wallace, of St. Louis, Mo. (Gurney E. Newlin, of Los Angeles, Cal., on the brief), for Western Willite Co.

James T. Roberts, of St. Louis, Mo. (L. M. Smith and George Eigel, both of St. Louis, Mo., on the brief), for Southern Surety Co.

Howard G. Cook, of St. Louis, Mo., for Trinidad Asphalt Mfg. Co.

Before STONE and KENYON, Circuit Judges, and JOHNSON, District Judge.

STONE, Circuit Judge. In March, 1924, Trinidad Asphalt Manufacturing Company (appellee herein) entered into separate contracts with the city of St. Louis for the paving of Pendleton avenue and of Meramec street. Each of those contracts required the paving to be in accordance with the Willite process. This was a process covered by letters patent 1,190,615 and consisted, generally speaking, of a mixture of asphaltic binder, sulphate of copper and a filler of finely ground soil. Mixtures according to this process are used for the binder course and the top wearing surface of pavements, being superimposed on a base of concrete or other substance. Appellant, Western Willite Company, is an associate licensee with the Missouri Willite Company for territory including St. Louis, Mo. Appellee proceeded to make this mixture at its own plant and to lay the mixture, thus prepared in paving the above streets. This disregard of the above patent rights resulted in an action by appellant and its associates against appellee for infringement of the patent. During the pendency of that action, a temporary injunction was issued enjoining appellee generally from manufacturing, using or selling any products covered by the above patents and particularly from the manufacture and use on Meramec street "of an asphaltic paving mixture such as is specified as the Willite process asphaltic pavement." A condition in granting this injunction was a bond for $25,000 "conditioned upon the payment by plaintiffs of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained by said injunction." The bond was given. Faced (under the injunction) with the situation of defaulting on its contract or of securing the mixture from plaintiffs, appellee elected to do the latter and purchased the mixture necessary for the paving of Meramec street. The result of the infringement suit was that the patent was held invalid. 16 F.(2d) 446 (C. C. A.). After such determination, the Trinidad Company filed its motion, later amended, for allowance of damages on the injunction bond. These motions claimed, as damages under the bond, the difference in cost of production by appellee and the price paid to appellant, haulage and some other minor items. The matter was referred to a master who, after full hearing, recommended allowance of $24,242.27. Upon hearing of exceptions thereto, the trial court entered decree for $19,557.87 from which this appeal is brought. There is a cross-appeal (No. 8157).

One contention urged by appellant is that no liability for any damages exists because the contract for the paving of Meramec street expressly obligated appellee to do just what it did do under the injunction, to wit, buy the Willite process mixture from the Missouri Willite Company. This contention is presented from several angles. It is argued that the contract created an obligation to pro-

cure the mixture from the above company; that the contract was, in this respect, for the benefit of the above Willite Company; that the specifications, specifying "Willite process," defined "the *source* of supply and the *brand* of manufacture of the said materials," thus giving the city the legal right to insist upon such mixture being obtained from the above Willite Company and that there is no evidence that the city would not so have insisted. This contention makes it necessary to determine just what the contract for paving Meramec street did require in this respect.

The contract is, apparently, a printed form used by the city with necessary alterations, insertions and additions. It provides for the paving of a designated portion of Meramec street. It includes detailed specifications. The base was to be concrete upon which was to be laid a "binder course and wearing surface of asphaltic cement and mineral matter (Willite process)." That this binder and wearing surface were to be Willite process is repeatedly and clearly expressed. The precise mixtures and a prescribed method for preparation of this binder course and of this wearing surface are set out in detail. Respecting whether the contractor (appellee) was to make this mixture itself or to buy it ready made from the Willite Company, there are two provisions which are to be considered. The first is an extended and detailed description of the required equipment of the "plant * * * furnishing materials and preparing same for the binder course or wearing surface under these specifications." That this provision was not left in haphazard, because part of a printed form, is shown by the erasures and changes made in the printed provision. The second is under the head of "Payment." In the *printed* form, this latter provision is short and as follows:

"The price bid per square yard for 'Refined asphalt pavement including binder course and concrete foundation' shall include the whole cost of furnishing all materials, mixing and placing of the concrete foundation and sprinkling same, of laying and rolling binder course and wearing surface, of protecting the work during construction and until ready to receive traffic, and of protecting adjoining pavement."

In place of this printed form there was a substitution, the final paragraph of which is evidently patterned rather closely after the eliminated printed provision, while the first and second paragraphs are entirely new. It is as follows:

"The Missouri Willite Company, owner of the patents used in the construction of asphalt binder course and wearing surface, Willite Process, has filed with the Board of Public Service on January 2d, 1924, a binding agreement to furnish to any contractor desiring to bid for the work, all the necessary mixture of asphalt binder mixed ready for use in accordance with the foregoing specifications at any time within five (5) months from date, at the price of $10.75 a ton, at the mixing plant of said Company at 6161 Maple Avenue. They have also agreed to furnish to any contractor desiring to bid for the work, all the necessary mixture for the refined asphalt wearing surface, Willite Process, mixed ready for use, in accordance with the foregoing specifications, at any time within five (5) months from above date, at the price of $15.50 per ton, at the mixing plant of said Company at 6161 Maple Avenue, in the City of St. Louis; said prices shall include license to use all the patents required in the construction of the binder course and refined asphalt wearing surface, Willite Process, as therein specified.

"The acceptance of bids by the Board of Public Service and the letting of a contract for same will be deemed by the Missouri Willite Company to be an acceptance of its proposal by the Board of Public Service and by the contractor to whom such contracts shall be awarded and are all that shall be necessary to bind the Missouri Willite Company to said agreement. The filing of a bid under this specification will be construed as an acceptance of the terms and the license agreement filed by the Missouri Willite Company at the price fixed by said agreement above outlined, which is on file with the Board of Public Service.

"The price bid by the contractor per square yard for 'Refined asphalt pavement and binder course (Willite Process) and concrete foundation,' shall include the whole cost of furnishing all materials, mixing and placing of the concrete foundation and sprinkling same, of laying and rolling binder course, of mixing, raking and rolling the wearing surface, and painting gutters of the completed wearing surface, of protecting the work during the construction and until ready to receive traffic, of protecting adjoining pavement, and all other expenses incidental to the full completion of the finished pavement."

It is mainly upon the provision just quoted (when considered with the agreement filed by the Willite Company with the city on January 2, 1924) that appellant relies for its contention that the contract between the city and appellant obligated appellant to buy

the mixture for the binder course and for the wearing surface from the Willite Company.

At the time this bid and this resulting contract were made by appellee, there was in existence a patent for this Willite Process. If that patent were valid, no one could make, buy or use the product of that process without the consent of the owners of the patent or of licensees thereunder. So far as this record discloses, no one had, until after the date of appellee's contract, questioned this patent and it was presumptively valid and so treated. On January 2, 1924, the exclusive licensee for the St. Louis territory filed with the board of public service of that city the contract following:

"Agreement by Missouri-Willite Company, Permitting the Use of a Patented Process, Known as 'Willite' under United States Letters Patent Nos. 1,190,615, 1,328,310 and 1,372,467, by Persons, Firms or Corporations Awarded Contracts for the Paving of Streets and Alleys in the City of St. Louis.

"To the Honorable Board of Public Service of the City of St. Louis:

"If and when your Honorable Board designated 'Willite' patented material to be used in the construction of streets or alleys in St. Louis, the undersigned, exclusive licensees for Missouri of the Patentee of 'Willite,' in order to assure proper competition in the lettings for said construction of streets and alleys, respectfully inform you, *and any bidder interested*, as follows:

"If and when any responsible bidder shall be awarded contract for the paving of a street or alley in St. Louis by your Honorable Board, or the City of St. Louis does construction work itself, where 'Willite' material is designated, a license will be issued to the contractor or to the City of St. Louis by the undersigned exclusive licensees for Missouri of the patentee to use said patented material, if and when the successful bidder shall enter into a contract with the City of St. Louis with property surety for the proper performance of the work awarded. The undersigned exclusive licensees for Missouri of the patentee will give such successful bidder the right to the use of the said patented material or any modifications of said patents that may be hereafter awarded to said exclusive licensees for Missouri of the patentee for the laying of the said patented pavement on the streets and alleys in the City of St. Louis as aforesaid.

"Said exclusive licensees for Missouri of the patentee agree to deliver to the successful bidder, or to the City, in the event the work is to be done by the City, the materials necessary for the laying of said patented pavement. These materials will be delivered in the wagons of the City or the contractor at the plant of the exclusive licensees for Missouri of the patentee, 6161 Maple Avenue, St. Louis County, and exclusive licensees for Missouri of the Patentee agree to have one of its experts give such advice as is necessary to the contractor or the City for the proper building and laying of such patented pavement. The exclusive licensees for Missouri of the patentee agree, at any time requested by the City, to furnish it with samples of the material that is being delivered to such aforesaid contractor or the City.

"The exclusive licensees for Missouri of the patentee will charge the City of St. Louis or the contractor using its patented product Ten & 75/100 Dollars ($10.75) a ton for Binder; Thirteen Dollars ($13.00) a ton for Asphaltic Concrete; and Fifteen Dollars and Fifty Cents ($15.50) per ton for Sheet Asphalt. These prices include the advice and inspection above mentioned, to be furnished by the exclusive licensees for Missouri of the patentee, and the materials will be delivered f. o. b. at the plant of the Company at the aforesaid number, 6161 Maple Avenue.

"This offer, to be binding on the exclusive licensees for Missouri of the patentee must be accepted within a period of five (5) months from this date, and even though accepted by the contractor or the City the license herewith given shall be null or void, unless the contractor or City shall actually begin the construction of surface laying of said patented article on the street or alley of the City of St. Louis affected by the contract awarded to said contractor or the City within a period of four (4) months after the award of such contract, and the licensee reserves the right of supervising said work for the purpose of seeing that it is done in the proper way by the contractor or the City and prosecuted with diligence.

"It is agreed that if for reasons beyond the control of the exclusive licensees for Missouri of the patentee, and after exercising all reasonable diligence, he is unable to secure the shipment of materials or procure the necessary labor for the making of said patented mixture, that in that event, the said exclusive licensees for Missouri of the patentee are to be held harmless for any delays occasioned the contractor or the City in the delivery to either of the said patented materials.

"The acceptance of bids by the City of

St...Louis and the letting of a contract for same shall be deemed by the undersigned exclusive licensees for Missouri of the patentee to be an acceptance of this offer by the City and by the contractor to whom such contract shall be awarded.

"Missouri Willite Company,

"By [Signed] F. L. Van Noy, President. "[Seal of Missouri Willite Company, Missouri, Corporate Seal 1923.]

"Dated January 2d, 1924."

This is the "agreement" referred to in the above quotation (under "Payment") from the contract for paving Meramec street. This Willite proposal was made to the board of public service which was the city department with which bids for paving work were filed and which executed paving contracts—including these contracts with appellee.

The paving contract itself (first paragraph under "Payment") construes, and correctly so, the Willite proposal to mean that that company will "furnish to any contractor desiring to bid for the work, all the necessary mixture of asphalt binder mixed ready for use in accordance with the foregoing specifications * * * at the price of $10.75 a ton * * * also *,* * all the necessary mixture for the refined asphalt wearing surface, Willite Process, mixed ready for use, in accordance with the foregoing specifications * * * at the price of $15.50 per ton * * * said prices shall *include* license to *use* all the patents required in the *construction* of the binder course and refined asphalt wearing surface, Willite Process, as herein specified." Such was the proposal of the Willite Company as understood by the parties (city and appellee) to the paving contract and as expressly and implicitly set out and defined in that contract. This was a definite recognition that the binder and the wearing surface required by the contract were mixtures made under a patented process; that the owner of such patents had a standing offer to furnish the binder and wearing surface, required by this contract, "mixed ready for use in accordance with the foregoing specifications" at certain prices which included the license to use "in the *construction* of such parts of the pavement." It was that proposal which was expressly accepted by the appellee in the next paragraph wherein it is said: "The acceptance of bids by the Board of Public Service and the letting of a contract for same will be deemed by the Missouri Willite Company to be *an acceptance of its proposal * * * by the contractor to whom such contracts shall be awarded and are all that shall be necessary

to bind the Missouri Willite Company to said agreement. The filing of a bid under this specification will be construed as an acceptance of the terms and [of] the license agreement filed by the Missouri Willite Company at the price fixed by said agreement above outlined, which is on file with the Board of Public Service." The marginal title of this paragraph is "Acceptance Thereof by the Contractor." We cannot see how this provision of the contract can be otherwise construed than as an acceptance by the contractor, as a part of the paving contract, of this offer or proposal as that offer is defined in the paving contract and as, in fact, the offer really is.

Taking the offer as filed and the acceptance together, we do not see why it is not a contract to buy these ready mixtures from the Missouri Willite Company.

It may be true that the appellee had, at all times, an undisclosed intent to make the mixture itself but it contracted to do otherwise. It is suing for damages arising out of the effect of the injunction upon the performance of this contract and the only effect complained of is that appellee was compelled thereby to do just what it had agreed in that very contract to do instead of being permitted to violate its contract.

The order should be and is reversed with directions to deny the motion for damages at costs of appellee.

The cross-appeal (No. 8157) involved a claim for interest on the amount allowed as recovery in the decree from which the main appeal was taken. The above determination of the main appeal disposes of the cross-appeal which should be and is dismissed.